J. Douglas McCalla
M. Kristeen Hand
THE SPENCE LAW FIRM, LLC
Spence & McCalla
P.O. Box 548
15 South Jackson Street
Jackson, Wyoming 83001
Phone:          307-733-7290
Facsimile:      307-733-5248



**FILED**
DISTRICT OF WYOMING

**JUL 12 2005**

**CLERK**

## UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| DEBORAH R. HAMILTON, individually; BRUCE HAMILTON, individually, and WHH, a minor, by and through his next of friend and father, BRUCE HAMILTON, <br> Plaintiffs, <br><br> v. <br><br> MARK A. ROPEL, individually; MOUNT CARMEL YOUTH RANCH, a Wyoming corporation; SOCIETY OF OUR LADY OF THE MOST HOLY TRINITY, a Texas corporation; DIOCESE OF CHEYENNE, a Wyoming corporation; ARCHDIOCESE OF DENVER, a Colorado corporation; DIOCESE OF CORPUS CHRISTI, or any other business names/entities that the Roman Catholic Diocese of Corpus Christi may be doing business as; and ARCHDIOCESE OF GALVESTON-HOUSTON, or any other business names/entities that the Roman Catholic Archdiocese of Galveston-Houston may be doing business as; and JOHN DOE, <br><br> Defendants. | Civil No. 05-CV-193-D |

## COMPLAINT

The Plaintiffs, by and through counsel, and for their causes of action against the Defendants, pleads and alleges as follows:

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 28 USC §1332, in that the parties are citizens of different states, and the amount in controversy exceeds Seventy-five Thousand Dollars ($75,000.00), exclusive of costs and interest. This Court has proper jurisdiction.

2.      Pursuant to 28 USC §1391, proper venue for this cause of action is the United States District Court for the District of Wyoming. The acts and omissions complained of occurred within the District of Wyoming. This Court has proper venue.

## PARTIES

3.      Plaintiffs Deborah R. Hamilton and Bruce Hamilton are husband and wife, and for all times mentioned herein are domiciled in Montana.

4.      Plaintiff WHH, a fourteen year old minor, is the son of Deborah and Bruce Hamilton, and for all times mentioned herein is domiciled in Montana.

5.      Defendant Father Mark A. Ropel is a Roman Catholic priest, and for all times mentioned herein is domiciled in Park County, Wyoming.

6.      Defendant Mount Carmel Youth Ranch (hereinafter "Youth Ranch") is a Wyoming corporation with its principal place of business in Park County Wyoming.

7.      Defendant Society of Our Lady of the Most Holy Trinity (hereinafter "SOLT") is a Texas corporation, and a Roman Catholic Religious Institute of Men, with its principal place of

business in Robstown, Texas. At all times material herein, SOLT operated ministries in and was represented in the Diocese of Cheyenne and the Diocese of Corpus Christi.

8.      Defendant Diocese of Cheyenne is a Wyoming nonprofit corporation and a United States diocese of the Roman Catholic Church, controlled by the Most Reverend David L. Ricken, with its principal place of business in Cheyenne, Wyoming.

9.      Defendant Archdiocese of Denver is a Colorado nonprofit corporation and a United States archdiocese of the Roman Catholic Church, controlled by the Most Reverend Charles J. Chatput, with its principal place of business in Denver, Colorado.

10.     Defendant Diocese of Corpus Christi is the common name of the Roman Catholic Diocese of Corpus Christi, a United States diocese of the Roman Catholic Church, controlled by the Most Reverend Edmond Carmondy, with its principal place of business located at 620 Lipan Street, P.O. Box 2620, Corpus Christi, Texas, 78403-2620.

11.     Defendant Archdiocese of Galveston-Houston is the common name of the Roman Catholic Archdiocese of Galveston-Houston, a United States archdiocese of the Roman Catholic Church, headed by the Most Reverend Joseph A. Fiorenza, with its principal place of business at 1700 San Jacinto, P.O. Box 907, Houston, Texas, 77001-0907.

12.     Defendant John Doe represents a Defendant liable for Plaintiffs' damages, but whose name and responsibility for Plaintiffs' injuries is currently unknown to Plaintiffs.

## FACTS COMMON TO ALL CAUSES OF ACTION

13.     Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

14.    On or about April 11, 2005, a Monday, at approximately 7:05 a.m., Plaintiff Deborah Hamilton and her son, WHH, were traveling south on Wyoming Highway 120 in a 1991 Ford pick-up truck toward the intersection with Park County Road 1AF.

15.    Plaintiff Deborah Hamilton was in the process of taking her son, WHH, to the school bus stop.

16.    On or about April 11, 2005, a Monday, at approximately 7:05 a.m., Defendant Father Mark Ropel was driving a 1989 Ford Bronco, carrying a passenger, Father Eckley Macklin, who is also a Roman Catholic priest. The two priests were traveling west on Park County Road 1AF toward the intersection of Wyoming Highway 120.

17.    Wyoming Highway 120 and Park County Road 1AF intersect.   It is a two-way intersection, with a stop sign directing traffic westbound and eastbound on Park County Road 1AF to stop. Northbound and southbound traffic on Wyoming Highway 120 are not directed to stop.  The intersection is clear and unobstructed. The intersection of Wyoming Highway 120 and Park County Road 1AF is hereinafter referred to as "the Intersection."

18.    At all times material, Father Mark Ropel and his passenger, Father Eckley Macklin, were in the process of driving to the Roman Catholic Church, Our Lady of the Valley, with the intent to attend and/or celebrate Mass.

19.    Both Father Mark Ropel and Father Eckley Macklin were dressed in the traditional attire of Roman Catholic priests.

20.    The Roman Catholic Church, Our Lady of the Valley, is located on Park County Road 1AF, a short distance from where it intersects with Wyoming Highway 120.

21.     On or about April 11, 2004, a Monday, at approximately 7:05 a.m., Father Mark Ropel

came upon the Intersection, failed to stop at the Intersection, failed to reasonably assess the

traffic conditions at the Intersection, and proceeded into the Intersection at an unreasonable rate

of speed.

22.     Father Mark Ropel collided his vehicle into the driver's side of Plaintiff Deborah

Hamilton's pick-up truck.

23.     Plaintiff's vehicle rolled and came to rest nearly one hundred feet from the point of

impact with Father Mark Ropel.

24.     WHH was ejected from the vehicle.

25.     Plaintiff WHH suffered serious physical injuries, including but not limited to:

    a.      injury to his spleen;

    b.      hospitalized for seven days;

    c.      back injuries;

    d.      head trauma.

26.     Plaintiff Deborah Hamilton suffered serious physical injuries.  Deborah Hamilton is a

forty-six year old functional C4 quadriplegic.  Her injuries include, but are not limited to:

    a.      fracture of the L-foreamen transversarium at C4;

    b.      vertebral artery injury at C4-5;

    c.      fractures and displacement of C5 and C6;

    d.      abnormal signal within the spinal cord from C3 down to C7;

    e.      quadriplegia;

d.      tetraplegia;

d.      persistent respiratory failure;

e.      pelvic fractures;

f.      pulmonary contusion;

g.      blunt chest trauma;

h.      rib fracture;

i.      incontinent bladder and bowel;

j.      left-sided facial fractures;

k.      nutritional supplementation via feeding tubes;

l.      tracheostomy with mechanical ventilation.

27.     Father Eckley Macklin, the passenger riding in Father Mark Ropel's vehicle, left the scene of the wreck and proceeded on to Mass at Our Lady of the Valley Catholic Church.

28.     Father Mark Ropel was given a citation for violation of W.S. § 31-5-222(b), which requires every driver approaching a stop sign to stop before entering the intersection.

29.     Upon information and belief, according to the Roman Catholic Code of Cannon Law, and/or other official handbooks or the like authored and adhered to by the Roman Catholic Church or an agent thereof, Roman Catholic priests, including Father Mark Ropel, have a duty to attend and/or celebrate Mass every day.

30.     Upon information and belief, Roman Catholic priests, including Father Mark Ropel, had a duty to attend and/or celebrate Mass on April 11, 2005, a Monday, which was the first day that

the Roman Catholic Cardinals met in conclave in Rome following the death of Pope John Paul,

II.

## FIRST CAUSE OF ACTION
### VICARIOUS LIABILITY

31.     Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

32.     At all times material, Defendant Father Mark Ropel was acting as an employee, agent or representative of Defendants as set forth herein.

33.     At all times material, Defendant Father Mark Ropel was acting within the scope of his employment, agency or representation of Defendants as set forth herein.

34.     Defendants are vicariously liable for the acts and omissions of Defendant Father Mark Ropel as set forth herein.

35.     Defendant Mount Carmel Youth Ranch, Inc. was at all times material operating as a youth treatment facility and working ranch where teenagers attended school, performed work, and attended Roman Catholic Mass.

36.     At all times material, Defendant Father Mark Ropel was acting as an employee, agent or representative of the Mount Carmel Youth Ranch, Inc. as a residential priest and counselor.

37.     Defendant Mount Carmel Youth Ranch is vicariously liable for the acts and omissions of Defendant Father Mark Ropel while acting in his scope of employment of the Youth Ranch.

38.     Defendant the Society of our Lady of the Most Holy Trinity (SOLT) was at all times material operating as a Roman Catholic Religious Institute of Men, with ministries located in and

controlled by the Diocese of Cheyenne, particularly the SOLT ministries and priests employed by or otherwise associated with the Mount Carmel Youth Ranch near Powell, Wyoming.

30.     SOLT is principally located within the territory embraced by the Diocese of Corpus Christi.

40.     Defendant SOLT at all times material operated ministries located in and controlled by the Diocese of Cheyenne, the Diocese of Corpus Christi and the Archdiocese of Galveston-Houston.

41.     Defendant Father Mark Ropel was a Roman Catholic priest employed by, belonging to, or an otherwise associated agent of SOLT.

42.     Defendant SOLT is vicariously liable for the acts and omissions of Defendant Father Mark Ropel while acting within his scope of employment with SOLT.

43.     Defendant Diocese of Cheyenne was at all times material operating as the governing body of the Roman Catholic Church represented in any capacity in the boundaries of the State of Wyoming and Yellowstone National Park.

44.     The Diocese of Cheyenne controls, manages, directs, and/or otherwise exercises dominion and control over all Roman Catholic priests, religious societies, religious institutes, missions or the like that are present in the territory embraced by the Diocese of Cheyenne, particularly the Religious Institute of Men, Defendant SOLT, its employees, agents or representatives.

45.     Defendant Father Mark Ropel was a diocesan priest, religious priest, extern priest, missionary priest or the like within the Diocese of Cheyenne, and was at all times material acting as an employee, agent or representative of the Diocese of Cheyenne.

46.     Defendant Father Mark Ropel was a priest controlled or otherwise managed by Defendant SOLT, participating in SOLT missionary or religious work controlled by the Diocese of Cheyenne, and at all times material Father Mark Ropel was acting as an employee, agent or representative of the Diocese of Cheyenne.

47.     Defendant Diocese of Cheyenne is vicariously liable for the acts and omissions of Defendant Father Mark Ropel and/or vicariously liable for the acts and omissions of Defendant SOLT, its employees, agents or representatives, particularly those of Defendant Father Mark Ropel.

48.     Defendant Archdiocese of Denver was at all times exercising dominion and control over the Diocese of Cheyenne.

40.     The Diocese of Cheyenne is considered a suffregan of the Archdiocese of Denver.

50.     Defendant Archdiocese of Denver is vicariously liable for the acts and omissions of the Diocese of Cheyenne, its employees, agents and representatives, particularly those of Defendant Father Mark Ropel.

51.     Defendant the Diocese of Corpus Christi was at all times material operating as the governing body of the Roman Catholic Church represented in any capacity within the territory embraced by the Diocese of Corpus Christi.

52.     The Diocese of Corpus Christi controls, manages, directs, and/or otherwise exercises dominion over all Roman Catholic priests, religious societies, religious institutes, missions or the like that are present in the territory embraced by the Diocese of Corpus Christi, particularly the Religious Institute of Men, Defendant SOLT, its employees, agents and representatives.

53.     Defendant Father Mark Ropel was a diocesan priest, religious priest, extern priest, missionary priest or the like within the Diocese of Corpus Christi, and was at all times material acting as an employee, agent or representative of the Diocese of Corpus Christi.

54.     Defendant Father Mark Ropel was a priest controlled or otherwise managed by Defendant SOLT, participating in SOLT missionary or religious work controlled by the Diocese of Corpus Christi, and at all times material was acting as an employee, agent or representative of the Diocese of Corpus Christi.

55.     Defendant Diocese of Corpus Christi is vicariously liable for the acts and omissions of Defendant Father Mark Ropel and/or vicariously liable for the acts and omissions of Defendant SOLT, its employees, agents or representatives, particularly those of Defendant Father Mark Ropel.

56.     Defendant Archdiocese of Galveston-Houston was at all times exercising dominion and control over the Diocese of Corpus Christi.

57.     The Diocese of Corpus Christi is considered a suffregan of the Archdiocese of Galveston-Houston.

58.     Defendant Archdiocese of Galveston-Houston is vicariously liable for the acts and omissions of the Diocese of Corpus Christi, its employees, agents and representatives, particularly those of Defendant Father Mark Ropel.

## SECOND CAUSE OF ACTION
### NEGLIGENCE

59.     Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

60.     Defendant Father Mark Ropel was negligent and displayed a careless indifference to the safety of others and violated duties owed to Plaintiffs in the following, but not exclusive, manners:

   a.     failed to stop at the intersection;

   b.     failed to properly assess the traffic conditions at the intersection;

   c.     failed to operate his vehicle at a reasonable speed;

   d.     failed to abide by the laws of Wyoming, including but not limited to, W.S. § 31-5-222(b), which is evidence of negligence;

   e.     failed to maintain a proper lookout;

   f.     failed to maintain proper vision;

   f.     failed to otherwise act in a reasonable and careful manner while operating a motor vehicle.

61.     As a direct and proximate result of the negligent and careless acts and/or omissions of Defendant Father Mark Ropel, Plaintiffs have suffered injuries for which Defendants are responsible as more particularly set forth below in the section of this Complaint entitled "Damages."

## THIRD CAUSE OF ACTION
## LOSS OF SPOUSAL CONSORTIUM

62.    Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

63.    Prior to the injuries sustained by Plaintiff Deborah Hamilton as a result of being injured in the collision with Father Mark Ropel, she was able to perform her duties as a wife, including but not limited to household services, child rearing responsibilities, advice, comfort, attention and intimate relations with her husband, Plaintiff Bruce Hamilton.

64.    Subsequent to the accident, and as a direct and proximate result of the tortious acts and omissions of Defendants, Plaintiff Deborah Hamilton is unable perform the work and services she customarily performed in the care, maintenance, and management of her family home.

65.    As a direct and proximate result of the negligent acts of Defendants, Plaintiff Bruce Hamilton has been and will be deprived of his wife's services, comfort, society, advice, and attention.

66.    Plaintiff Bruce Hamilton has been and will continue to be Damaged in an amount to be set forth at trial.

## FOURTH CAUSE OF ACTION
## LOSS OF PARENTAL CONSORTIUM

67.    Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

68.     Plaintiff WHH is fourteen years old and a minor pursuant to Wyoming law.

69.     Prior to the injuries sustained by Plaintiff Deborah Hamilton as a result of being injured in the collision with Father Mark Ropel, she was able to perform her duties as a Mother to her minor son, WHH, including but not limited to parental care, training, companionship, nurturing, guidance, supervision, socialization, and other care, comfort and society.

70.     Subsequent to the accident, and as a direct and proximate result of the tortious acts and omissions of Defendants, Plaintiff Deborah Hamilton is unable perform the work and services she customarily performed as a parent in the care, comfort and society of her minor child, WHH.

71.     As a direct and proximate result of the negligent acts of Defendants, Plaintiff WHH has been and will be deprived of his Mother's care, comfort and society.

72.     Plaintiff WHH has been and will continue to be Damaged in an amount to be set forth at trial.

## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

73.     Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

74.     At the time and place of the events described herein, Father Mark Ropel owed a duty of reasonable care to the Plaintiffs to avoid causing injury to them and is liable for independent intentional and/or reckless acts and omissions.

75.     At all times material, Father Mark Ropel engaged in extreme and outrageous conduct, beyond the bounds of decency, causing severe emotional distress.

76.    At all times material, Father Mark Ropel's conduct went beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community.

77.    Defendants are vicariously liable for Father Mark Ropel's intentional and/or reckless acts and/or omissions.

78.    As a direct and proximate cause of the intentional or reckless acts and omissions of the Defendants, the Plaintiffs have suffered damages in the form of distress which is so severe that no reasonable person could be expected to endure it. Said injuries are more particularly set forth below in the section of this Complaint entitled "Damages."

## DAMAGES

79.    Plaintiffs incorporate by reference the facts and allegations above as though fully set forth herein.

80.    As a direct and proximate cause of the acts and omissions of Defendants complained of herein, Plaintiff Deborah Hamilton suffered damages, including but not limited to, severe, permanent physical injuries which have radically changed her lifestyle on a permanent basis. As a consequence of the collision, Deborah Hamilton has sustained the following damages:

      a.      lost income, past and future;

      b.      medical expenses, past and future, including the cost of care, which can reasonably be expected to incur in the future in an amount to be set forth at trial;

      c.      readily quantifiable damages to Plaintiff's property, including but not limited to the damage to her vehicle and the contents within;

    d.      readily quantifiable out-of-pocket expenses incurred by Plaintiffs and by others that are attributable to the Defendants' tortious conduct;

    e.      pain and suffering, past and future;

    f.      loss of enjoyment of life, past and future;

    g.      disfigurement;

    h.      disability;

    i.      damages resulting from the infliction of emotional distress, past and future, in an amount to be set forth at trial;

    j.      punitive damages:  exemplary and punitive damages are recoverable by Plaintiffs in a reasonable amount sufficient to adequately punish the Defendants and to deter future reprehensible conduct of the type alleged in this Complaint as follows: 1) The tortious acts and omissions of the Defendants were so gross and culpable in nature that such acts and omissions constitute willful and wanton disregard for the lives and safety of others, and specifically, in complete disregard for the life and safety of Plaintiffs. Plaintiff is entitled to recover exemplary and punitive damages as a result of Defendants' willful and wanton tortious acts and omissions so as to deter Defendants and others from committing the same or similar misconduct, which endangers the general safety of the public;

    k.      costs of this action, and any other relief deemed just.

81.    As a direct and proximate cause of the acts and omissions of Defendants complained of herein, Plaintiff WHH suffered damages, including but not limited to:

    a.      lost earning capacity;

b.      medical expenses, past and future, including the cost of care, which can

reasonably be expected to incur in the future in an amount to be set forth at trial;

c.      readily quantifiable out-of-pocket expenses incurred by Plaintiffs and by others

that are attributable to the Defendants' tortious conduct;

d.      pain and suffering, past and future;

e.      loss of enjoyment of life, past and future;

f.      disfigurement;

g.      disability;

h.      damages resulting from the infliction of emotional distress, past and future, in an

amount to be set forth at trial;

i.      damages resulting from the loss of parental consortium with his Mother, Plaintiff

Deborah Hamilton;

j.      punitive damages:  exemplary and punitive damages are recoverable by Plaintiffs

in a reasonable amount sufficient to adequately punish the Defendants and to deter future

reprehensible conduct of the type alleged in this Complaint as follows: 1) The tortious acts and

omissions of the Defendants were so gross and culpable in nature that such acts and omissions

constitute willful and wanton disregard for the lives and safety of others, and specifically, in

complete disregard for the life and safety of Plaintiffs. Plaintiff is entitled to recover exemplary

and punitive damages as a result of Defendants' willful and wanton tortious acts and omissions

so as to deter Defendants and others from committing the same or similar misconduct, which

endangers the general safety of the public;

k.      costs of this action and any other relief deemed just.

82.     As a direct and proximate cause of the acts and omissions of Defendants complained of

herein, Plaintiff Bruce Hamilton suffered damages, including but not limited to:

    a.      damages resulting from the loss of spousal consortium with his wife, Plaintiff

        Deborah Hamilton;

    b.      punitive damages:  exemplary and punitive damages are recoverable by Plaintiffs

in a reasonable amount sufficient to adequately punish the Defendants and to deter future

reprehensible conduct of the type alleged in this Complaint as follows: 1) The tortious acts and

omissions of the Defendants were so gross and culpable in nature that such acts and omissions

constitute willful and wanton disregard for the lives and safety of others, and specifically, in

complete disregard for the life and safety of Plaintiffs. Plaintiff is entitled to recover exemplary

and punitive damages as a result of Defendants' willful and wanton tortious acts and omissions

so as to deter Defendants and others from committing the same or similar misconduct, which

endangers the general safety of the public;

    c.      costs of this action, and any other relief deemed just.

WHEREFORE, Plaintiffs pray that the Court enter judgment against the Defendants in an

amount as supported by the allegations of this Complaint, as follows:

    1.      Judgment against Defendants for general damages in an amount consistent with

        the allegations contained herein and to be proven at trial;

    2.      Judgment against the Defendants for special damages in an amount consistent

        with the allegations contained herein and to be proven at trial;

3.    Judgment against Defendants for punitive damages in a fair and reasonable amount to be determined by a jury;

4.    Judgment for costs, interest, and such other and further relief as the Court deems just and equitable.

DATED this ___14___ day of July, 2005.

R. Douglas McCalla
M. Kristeen Hand
THE SPENCE LAW FIRM, LLC
Spence & McCalla
P. O. Box 548
Jackson, Wyoming 83001
(307) 733-7290

Attorneys for Plaintiff